May it please the Court, I represent Mr. Earle, and I'd like to reserve three minutes. All right, Counsel, please be reminded that the time showing is your total time remaining. Thank you. There is no question that Mr. Earle is a very difficult defendant. However, federal courts honor the rule of law, which treats even disagreeable people as well as agreeable people. This was a challenge, though, for Judge Snow, who was not as experienced in criminal law nor experienced with my clients. The constitutional violations that ensued included deprivation of counsel during pretrial litigation, complete blanket exclusion of any evidence of involuntariness of the confession, an expert who testified about what lab technicians found, and a jury instruction that placed a burden on Mr. Earle, placed a burden on him on a defense that he never raised. This, together with other errors that may not be as constitutional, nevertheless produced a fundamentally unfair trial. The problem with the exclusion of Mr. Earle's involuntariness evidence, the government has talked about that this is not what Crane is about. However, Crane v. Kentucky is a very general opinion about the right to produce a defense. What's remarkable here is that in this case, what our judge did exactly tracks what happened in Crane v. Kentucky. Well, can I ask, what specifically is the evidence that was excluded on voluntariness? Because I think the jury did get to see video of the arrest, and they did see video of the interview with Agent Lee. So what are you referring to in particular? I'm not sure the jury saw video of the arrest, except from the airplane. The airplane, which does not record anything that was being said at the time. The part that was excluded was the body cam video of the officers where Mr. Earle is invoking his right to counsel, as well as body cam video of Officer Hammond, who had transported Mr. Earle, where he is asking him questions, and Mr. Earle is apparently invoking again. He said, I don't want to speak to you guys, but I want to speak to a lead detective. He said, I don't want to speak to you guys, and later on when pressed, he said he would speak to a lead detective. How was he pressed? He was pressed by saying, well, you're going to, when he said, and you guys don't understand what's going on, well, then you're going to tell us what's going on. That's what Officer Hammond said. No, he said, and we do understand what's going on. And then, okay, so you're going to tell me, right? Yes. And so that, in your view, that's evidence that his will was overborne because of that comment? No, I think in the process, when we look at everything, and of course it's totality of the circumstances, as it goes along, he is also being exposed to continued questioning by Officer Hammond. This is going to then create the impression that they won't honor that, and so he has to try and do a fallback. And when it gets to the time that he's in there with the agent at the police station, he is not giving, he is immediately starting to make some pretty conditional qualified questions about, you know, do I need a lawyer, you know, should I, and until he finally invokes. And so it's pretty clear then, by the time he gets into the agent, that he does not believe that he can't talk. He certainly is talking. Doesn't he, isn't he the one that initiates that where's the lead detective, I want to talk to the lead detective? He did, he was the one who said that after some discussions were going on. So what is your argument that that was, his will was overborne at that point, and that he didn't know what he was doing when he asked for the lead detective? My point would be that he stated that just to get away from these officers questioning him, that he put it off and said I'll talk to the lead detective. He still had the option not to, of course. But that still doesn't make it involuntary. I mean, what's the argument that he was, that the other officers were unpleasant or this question was unpleasant? And so I just don't understand, I'm just not seeing the involuntariness part. This is not, you're confusing the two things, Your Honor, which is the question of involuntariness, which the Court decided in the suppression hearing, is one thing. It is a separate thing under Crane v. Kentucky about being able to present any evidence of involuntariness to the jury, and that would be a question for the jury to decide. But to go back to my earlier, but the jury did see, I think it was the government that wanted to put in this video of the confession with Agent Lee, so the nature of the incriminating statements came up in the context of that video that the jury did see, so they did see that interaction and whether it would have been voluntary or involuntary. They did not see the part beforehand where Mr. Earle was saying he did not want to talk? But he didn't make any incriminating statements beforehand. It was only after he was read as Miranda Wrights with the FBI agent, and then the jury did see that exchange. That is true, but that does not change his right to try and show the jury evidence of involuntariness. From before. From before. Okay. When we get to matters such as the duress instruction, that is particularly problematic. Sorry, before you get to that, so your argument is not necessarily that this proves that it was involuntary. You're just saying that he should have been allowed to present that it was involuntary. Exactly. But doesn't Crane require any sort of, like, threshold showing at all? The threshold showing for any evidence that you're putting in is going to be under the evidence rules. Of relevance or something? Yeah, relevance. And so that's a very low showing. Obviously, if there were problems with hearsay, it could be objected to, but yes. Okay. As to the duress instruction, the duress instruction comes about through two errors the government did. The first one was to, excuse me. The first one was in how they included that reference to two Mexicans coerced me. They included that in their excerpt. They have excerpt things, and then they included this irrelevant thing the entire confession was objected to. And so they had left that in there. That's not Mr. Earle opening the door. That's the government. At the second point, then, the government asked for this instruction, and it was also based, the reason why he asked for it was for a second error of the government, which is Officer O'Neill, who had put in his search warrant two names, Mexican names, but as the persons who committed the robbery, not who coerced, but who committed the robbery. So they would be different. What was that? Was that just he was using a template for a warrant or something and forgot to change those names? That was the argument that, unfortunately, he had passed away before trial. And so we did not have his testimony, but that was the argument that it was left in there by error. Can I ask, so let's say we agree that there was error with the duress instruction. One of your arguments is that it shifted his burden. Can you explain why that is? That is because there is a burden to prove duress, and it specifically says. And I understand that, but the government still, I think the jury was instructed that the government still bears the burden of proving the robbery offenses beyond a reasonable doubt. That is true. So why was there a shifting of the burden away from the government to the defendant? It's not a shifting of the burden away. It is adding a burden to the defendant, and that's because the instruction says you have to, in order to prove duress, he has the burden to show X. And the problem is that the jury could read that. We don't know. We don't have jury questions. We don't know. But the jury could read that as this is an easy way to fix the case, to resolve the case. It is a burden. He has to have this burden. He didn't. He's guilty. That is a possibility that we can't say necessarily that happened. Does it lessen the potential impact of confusion that the judge said, I don't believe Mr. Earle is presenting this duress defense, but I'm going to give it anyway? I believe he said that not to the jury. Or was that not in front of the jury? I thought that was in the charge, that second charge conference in the middle of. Out of the presence of the jury. Yes. I don't believe he said that. Now, the prosecution was still able to do that. You did not have to have the duress instruction. The prosecution could have argued much more clearly, look, this isn't the issue. The issue is without having to put in a duress instruction. And by shifting that on to him, it's possible the jury would have found on that as an easy way to guilt. Now, in a six-day trial, we have a verdict in under four hours. And if you think about how long it takes to even get, you know, everything going, it's probably two, two and a half hours of deliberations. If you think about all the evidence of five different cases with different disguises, different descriptions, and we have a verdict that quick, is it possible that this was a reliance on that instruction? And the problem is that they have to show when there's a dispute like this, they have to show that it was necessary, that it was a necessary finding that the ‑‑ Before you run out of rebuttal time, I think you wanted to save some time, but can you address the confrontation clause issue? You know, why is it not distinguishable that the fact that this expert, you know, supervised the whole thing, directed the subordinates to do certain tests and then make the analysis himself or herself? That one is very clear. And that's because his supervision, it's one thing. The Smith case talks about participated in. Yes. He was questioned. He did not participate in. He knows what the protocols are. He got the results. He got findings. And he used those to make his own opinion. But the fact he's a supervisor, some supervisors are deeply involved. His testimony was no, that other people did it. I thought he directed what other people would do, though. He told ‑‑ he did not direct them, go do this, go do that. And even if he did, it is their findings that was brought in, not just what he told them to do. But it was his report from those test results, was it not? That's what makes it a little bit different for me than the Smith case, because he's the one that writes up the reports and analyzes it. He's not conveying someone else's notes or their own reports. The fact that he's not actually quoting their reports, he's relying on it. And he also testified that they ‑‑ he used we. We did this, whereas he didn't know. He knows it's the protocol. And he said, we did this testing, we did these things, we followed these, and he doesn't know that. That means he's basing it upon things that he doesn't have personal knowledge of. His personal knowledge is crunching the numbers for the DNA numbers that were conveyed to the jury, but in doing so ‑‑ So what an expert does, they read books and other things that, you know, and they understand and they provide their expert opinion. That's right? Respectfully, no. They do read books. They do provide their expert opinions. But in this case, he said ‑‑ Using other people's materials and things of that nature. Using other people's materials is very different from findings and work that you want to impeach. Mr. Earle wanted to question and impeach about the process and whether or not there was errors in the DNA. And that's very specific to those other technicians that weren't present. All right, thank you, counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Anthony Church, and I represent the government in this matter. I'd like to begin, unless the Court redirects my statements to the voluntariness issue that was discussed with the Court a few moments ago. There was absolutely no evidence in this case that the confession was involuntary. As the Court is able to see and as the jury, thank goodness, technology is what it is today, because in olden times, we would have had to take the officer's word for how he treated the defendant. In this instance, we, the prosecution, the defense, and including the jury, were able to see exactly how the defendant was treated by Agent Lee in this instance. Agent Lee basically made the defendant feel as comfortable as he humanly could. But, counsel, I think the defense argument is there's evidence that was prior to that that related to his voluntariness with Agent Lee that he was not permitted to admit, and that that constitutes a violation under Crane. Certainly. And so discussing the Crane factors, Your Honor, there are several, and this case is, as explained in the government's brief, really nothing like Crane. The Crane facts were quite different than the Errol facts. And the Crane issue, we're talking about a 16-year-old boy who was accused of murder. He was surrounded by what they said were six police officers. He asked to speak with his mother. They denied him the ability to do that. He, in addition, was put in a windowless room for a lengthy period of time. Here, again, the evidence of voluntariness with Agent Lee is shown on video. And the items that the defense takes issue with that were not presented to the jury come squarely within the court's ability under Crane to exclude should it determine that it was irrelevant. And the things that we're really talking about here are the defendant's statement to a police officer initially that he wasn't talking to anybody. And that has to be read in context with, when you read the transcript moments later, he says, you guys don't understand what's going on here. So he reinitiates immediately. And this is a question of law that the Court had already determined, had already listened to evidence on, held an evidentiary hearing, and had made determinations on. So with respect to that, the Court was under no obligation under Crane to include it for the jury's consideration as to voluntariness. And, frankly, counsel, do you agree under Crane that the threshold showing is only relevance, whether or not the involuntariness is relevant? And then what do you think happened here? The district court essentially said it's not relevant because the showing is so weak? Well, as I was stating, Your Honor, the Crane does have its own threshold. And I think it's something more than just relevance. I think the district court has the ability to exclude it under relevance. But per Crane, additional facts about how confessions are obtained were not highly relevant to its reliability and credibility and weren't central to the defendant's claims of innocence. So I think that's really where it goes, right? And the — So that has to be central to the defense of innocence, isn't it? Exactly. And here what we had was, at least the first thing that's discussed that was not admitted was, in fact, his initial invocation, which he immediately follows up with, you guys don't understand what I'm talking about, or what's going on here. And these were not central to his claim of innocence. I think the second thing that was raised under the Crane in this argument was, Agent Lee read on a Miranda card to the defendant, and he muffed the first line. And, of course, as the Court knows, the Ninth Circuit has held that there doesn't have to be a verbatim reading of Miranda. I think in this instance, Agent Lee said something like, I must read you your Miranda rights. And I think the line reads something like, I must make sure you understand your Miranda rights. But two things. One, at the end of the Miranda warning, Agent Lee made sure that the defendant understood his rights. And the defendant affirmed that he understood the rights that Agent Lee had read to him and explained to him before they went further and had a conversation. Two, with respect to voluntariness, this really has, from the government's perspective, no bearing on voluntariness, because it was simply a typographical error in reading. And the agent made sure that the defendant understood his rights on video before going forward with the confession. Kagan. Can I switch you to duress? Sure. As I understand it, the government was the one that wanted to admit the confession with Agent Lee. And then it asks for this duress instruction, which I thought was quite weird. It's almost as if the government is trying to waylay the defense strategy. Why isn't there a problem with having given a duress instruction and potentially confuse the jury over a theory that the defendant did not want? Well, I think that to answer the question, Your Honor, first, the defendant's statements to the agent were something about the effect multiple times that, in his words, Mexicans were making him do this. He said Mexicans and a person named Gatto, who he didn't present a last name to, were making him do these robberies. That was so intertwined in the conversation with Agent Lee that it was difficult to extract it in a way that the video would be honest to the jury. But was that the only time that there was any evidence to support a duress instruction? His statements are yes to Agent Lee during the confession, that Mexicans made him do this robbery. Right. But was there anything else in the record that would support a duress instruction other than that video? No. Nothing. Nothing. And I think, to answer your question, you said the Court asking about it may be a little irregular, and it was the government's intent in requesting that instruction to not confuse the jury, because it did come in. It is, in effect, evidence of its consciousness of guilt, Your Honor. Essentially, during the confession, he says, without basis, without being able to give a last name to Gatto, that these Mexicans made him do it and this guy named Gatto made him do it. And so it's just so patently, from the government's perspective, unbelievable on its face in that he wasn't able to give more information. But then the district court says, I think, when speaking about the jury instructions, if you don't, to Mr. Earle, I think he's representing himself at this point, if you don't rely on duress in your closing arguments, I won't give it. And as I saw it, Mr. Earle did not rely on duress, and yet the Court gave it because there was some discussion about other people being involved in the bank robberies. So, you know, what happened there? Yeah. I agree with the Court there. Mr. Earle, in no — in no — I was present for the trial. In no way did Mr. Earle at any point during the trial argue his statement that the Mexicans made him do it. In fact, he didn't testify at trial. He simply asked questions of the witnesses. But in — to address the Court's question about the search warrant having those two names, it's exactly as my colleague explained. The explanation that we got at trial was they were using a form warrant, cut and paste, and they accidentally left in names from a prior bank robbery warrant that they did. Mr. Earle did make reference to those in his closing argument, but I don't think he was arguing duress with respect to mentioning those names. He was simply, I think, arguing that the police department was incompetent in doing what they did, and who are these folks? So let's suppose the Court committed error by giving the duress instruction. Why isn't there prejudice? Well, there's absolutely no prejudice here, Your Honor, because, again, the instruction was given to try to keep the jury clear on what duress is, since it was hearing the evidence of the defendant claiming that Mexicans made him do it during the confession. And I think that it's important here to note how the Court worded it for the jury. The Court said, the district court said, there has been some suggestion that the defendant may have acted under coercion. So the district court was careful to say — not say, the defendant is claiming that this was a — this was coercion. There is some evidence here supported in the — to give the instruction. That's under the — the Candelaria, the Ninth Circuit case. And although that's kind of backward, where the defense was asking for an instruction and it was in a — a threats case and the Court decided not to give it, what the — what the Court did find is, if there is some evidence to support the instruction, the Court can give the instruction. And — and here, any error is harmless beyond a reasonable doubt, because the government, frankly, without any of this, had overwhelming evidence to show that Mr. Earle was, in fact, the — the bank robber as to each of the — the five bank robberies. With respect to the fifth bank robbery, Your Honor, he was caught as close to being caught in the bank as he could. He robbed the bank. He was in full guise. He had a mask on. He was covered from head to toe, gloves, wig, hat, sunglasses. But when he went outside, there was this — this — this gentleman named Elliot Wexler, and he was a customer of the bank. He was sitting in the parking lot. And his testimony — And he followed him. He did. He did. His testimony was he starsky and hutched it because he thought that a bank robbery was happening. And so he — he followed him out of the parking lot and he follows him up to a particular area. Mr. Wexler calls 911, does — does what you think he would do, notifies the police. He's behind a guy that he thinks robbed a bank. He photographs the license plate that's on the vehicle. And 911 then kind of breaks in and says, okay, we're over him now with an airplane. We — we see you. We see the — the car. You can disengage. He does. And so can I — so — so is the government's position that it sounds like the — the duress instruction was not necessary? Oh, I think it was, Your Honor. I think it was to — so as not to confuse the jury because they did hear evidence. I mean, I guess the government's position is that — that Earl did not argue duress. No, he did not. But he did state duress in his — in his confession. That was his initial theory to Agent Lee was Mexicans made to do it. So you're saying even if the defendant doesn't argue duress, it can still be appropriate if the evidence somehow shows that it's possible? I'm sorry. Absolutely, Your Honor, because the government properly admitted the confession under the rules of evidence. These were statements against the — the statements against the party's interest. Government properly entered them. And since he did, you know, argue, his — his initial thought was that these other folks had made him do it. It came in front of the jury. And the government, because there was some evidence in front of the jury that this was out there, the government under Candelaria could ask for this instruction. I think it was properly given. And to address that — that question that maybe the defendant was — somehow had a burden placed on him here, that's just not the case. When you read the instruction, the instruction actually says that the government has the burden to prove beyond a reasonable doubt, just as the separate instruction does. The government has the — the burden to — to prove beyond a reasonable doubt. Each and every element of each and every bank robbery — so in — in essence, by giving the instruction, the jury got that notice or that — that explanation of what their burden was and how high the government's burden was two times. They got it in the duress instruction, and then they got it in the reasonable doubt instruction. Before your time runs out, can you address the Confrontation Clause issue and whether an expert can — whether an expert can testify as to tests that he or she did not themselves conduct, but is relying on the test results to formulate their own conclusions and write a report? I listened to the Court on this point, and I — and I have to agree that the — the Smith case, Smith v. Arizona, the facts are completely different than this particular case, because in Smith, they were talking about what is — is referenced as mouthpiece testimony, so essentially the — the expert in that case had nothing to do with the case. Here, we did have an expert. He's an expert witness, so he does rely on, you know, memoranda and — and issues to — to state an opinion, and he — he issued his — his opinion after doing that. But the difference — I'm sorry. But what he can't do is state someone else's opinion. Exactly. And was that happening here? No, not directly, Your Honor. I think there could be an argument that — But what if it's happening indirectly? Yes. And I think that was — let me get to you, Your Honor. I think indirectly, it could be argued that he was stating the positions of the — the lab technicians who were actually doing the tests. I don't think so. Again, I don't — I don't think that that's the — the case. I think that's proper under the expert testimony. But what I would like to impress upon the Court is the harmless error standard, which I was talking about a few moments ago on the other issue. And if the Court here finds that there was some error, a violation of the Confrontation Clause is harmless and depends on multiple factors. The importance of the evidence here, in this case, the DNA evidence was completely — it was helpful, but it was not important whatsoever based on the overwhelming evidence we had in Count 5. The DNA evidence only went to Count 5. They found DNA evidence on a glove and on a mask. And it was overwhelming — overwhelmingly Mr. Earle's DNA. But the government didn't even seek to have those things tested until later on in the process. We were completely prepared to go to trial without testing them based on the evidence. So the importance of the evidence here was — was very low. Whether the evidence was cumulative, again, I think it's — the evidence here in Robbery 5 speaks for itself. It was cumulative based on Mr. Earle's tracking the long and winding road from the bank all the way to the freeway where he's under complete surveillance, and then found in the car with basically everything from the robbery except for the tracker, which he threw out the window, but he was found with the little bits of currency in the car surrounding him. And then finally, the overall strength of the government's case, again, the government's arguing here, and I think the evidence shows that there's overwhelming evidence. I do see that I'm running out of time. If there are no other questions, the government asks the Court to respectfully affirm. Thank you. Thank you, Counsel. Rebuttal. Let's have one minute. As to the jurist's instruction, the problem here is that we have one instruction saying that there's a burden of proof on the government and another one talking about a burden for the defense. And in order to find when there's an error in the instruction like this on a disputed legal issue, then the Court has to find that there was, that the evidence necessarily, the quote is, must have necessarily, that the instruction on the government's burden must have necessarily been what the jury decided on. And that's Harrison Philpott. And we don't have any evidence here that says they must have necessarily done that. This is a very I go to the confrontation clause. It is, Smith was not about what the expert, how the expert did things. It was about whose information and what information the expert was relying on. And that is the same in both instances. And that's why Smith applies. As to harmless error, the government likes to talk about that the evidence is overwhelming. But the harmless error, the test is not whether that is overwhelming. It is whether or not the evidence was so injurious to the defense that it deprives him of a fair opportunity to defend his case, which is Chambers and Payton, both of which I cited. And under that we have only three of the issues that were trial issues, the substantive issues that were trial issues that are subject to harmless error. We do not have harmless error impacting the Rule 12D. We do not have it impacting the deprivation of counsel. We do not have it impacting the speedy trial problem. And so it only impacts those other three, which were trial errors, when we consider the fact that we are talking about the inability to confront the interrogation, the inability to confront the DNA. What are the two, out of all the evidence in trial, what are the two things the juries most find reliable is the confession and DNA. And so this is actually very important to them. All right. Counsel, you have exceeded your time. Could you wrap up, please? May I? Less than a minute. Deprivation of counsel, may I address? Less than a minute. Thank you. There is a real problem with deprivation of counsel. He was not told what his exposure was, his sentencing exposure was. He was told at the time that it was 20 years and not told that it was stacked. He was told there would be restitution. He was not told how much. As a result, that was not a proper deprivation. Your Honors, there are so many errors here, and the harmless error is taken cumulatively, just like cumulative error at the end. There are so many. You cannot say that this was a fundamentally fair trial. We have not addressed reassigning the judge. I would leave that to the briefs. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court. That completes our calendar for today. We are on recess until 930 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: RAWLINSON, BUMATAY, SANCHEZ